# STATE OF NORTH CAROLINA

_____ Robeson _____ **County**

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff*<br>Bayview Loan Servicing | |
| *Address*<br>c/o Brock & Scott, PLLC, 5121 Parkway Plaza Blvd. | **CIVIL SUMMONS** |
| *City, State, Zip*<br>Charlotte  NC  28217 | ☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| **VERSUS** | G.S. 1A-1, Rules 3, 4 |
| *Name Of Defendant(s)*<br>Carolyn Locklear et al. | *Date Original Summons Issued* |
| | *Date(s) Subsequent Summons(es) Issued* |

## To Each Of The Defendant(s) Named Below:

| | |
|---|---|
| *Name And Address Of Defendant 1*<br>The United States through Its Agency the Internal Revenue Service<br>c/o Civil-Process Clerk<br>310 New Bern Ave., Federal Building, Ste. 800<br>Raleigh  NC  27601 | *Name And Address Of Defendant 2* |

### A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| | | |
|---|---|---|
| *Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)*<br>Franklin L. Greene<br>Brock & Scott, PLLC<br>5121 Parkway Plaza Blvd.<br>Charlotte  NC  28217 | *Date Issued*<br>7-30-15 | *Time*  4:19  ☐ AM  ☒ PM |
| | *Signature*<br>Miranda W. Barton | |
| | ☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

| | | |
|---|---|---|
| ☐ ENDORSEMENT (ASSESS FEE)<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date Of Endorsement* | *Time*  ☐ AM  ☐ PM |
| | *Signature* | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

AOC-CV-100, Rev. 6/11
© 2011 Administrative Office of the Courts

(Over)

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason.

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (Type Or Print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 6/11
© 2011 Administrative Office of the Courts

STATE OF NORTH CAROLINA
COUNTY OF ROBESON

GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS _____

Bayview Loan Servicing, LLC

        Plaintiff,

v.

Carolyn Locklear, Lennie Locklear a/k/a Linnie
Locklear, Meritage Mortgage Corporation, Lumbee
Guaranty Bank, the United States of America acting
by and through its agency the Internal Revenue
Service, and the North Carolina Department of
Revenue,

        Defendants.

COMPLAINT

NOW COMES the Plaintiff and for its complaint of the Defendants avers and states as follows:

### Statement of the Case

1.      This is an action to reform title to real property located at 508 Fodiesville Road, Shannon, NC 28386 ("Property") and judicial foreclosure for the same.

2.      This action seeks to correct the legal description of the Deed of Trust recorded in Book 1211 at Page 0565 of the Robeson County Register of Deeds.

3.      This action also seeks to reform the name of the grantee named as Linnie Locklear in a certain vesting deed, which was recorded in Book 888 at Page 0005 of the Robeson County Register Deeds, to correct the spelling of said grantee's given name.

### Parties

3.      The Plaintiff, Bayview Loan Servicing, LLC, is an entity authorized to conduct business in the State of North Carolina.

1

4. Upon information and belief, Defendant Carolyn Locklear is a citizen and resident of Robeson County, North Carolina.

5. Upon information and belief, Defendant Lennie Locklear a/k/a Linnie Locklear is a citizen and resident of Robeson County, North Carolina.

6. Upon information and belief, Defendant Meritage Mortgage Corporation ("Meritage") is an Oregon corporation. Meritage had an interest in this Property by virtue of a Deed of Trust given by Carolyn and Linnie Locklear on March 26, 1999 and recorded with the Robeson County Register of Deeds on March 31, 1999 in Book 1051 at Page 891. Meritage's interest in the Property was extinguished by the loan that Plaintiff made to the Locklears in 2001. No monetary relief is being sought from this Defendant.

7. Upon information and belief, Defendant Lumbee Guaranty Bank is a North Carolina Banking Corporation authorized to conduct business in North Carolina. Lumbee Guaranty Bank may have an interest in the Property by virtue of a judgment it obtained against Linnie Locklear in case 10 CVD 1378 in the Robeson County District Court. No monetary relief is being sought from this Defendant.

8. The United States of America, by and through its agency the Internal Revenue Service is a Defendant in this case via tax liens on the Property. No monetary relief is being sought from this Defendant.

9. The North Carolina Department of Revenue is a Defendant in this case via tax liens on the Property. No monetary relief is being sought from this Defendant.

## Jurisdiction and Venue

10. The subject matter jurisdiction over this action is conferred upon and vested in this

2

Court by virtue of N.C.G.S. § 7A-240.

11.     Robeson County, North Carolina is the proper venue for this action as it is the location of the Property.

12.     To the extent constitutionally permissible, in rem jurisdiction is claimed over the Defendants pursuant to N.C.G.S. § 1-75.8.

<u>Facts</u>

13.     On December 11, 1995, Jeff Locklear and Retha Jane Locklear conveyed the Property to Carolyn Locklear and Lennie Locklear by deed ("Deed") recorded in Book 888 at Page 0005 in the Register of Deeds' Office of Robeson County, North Carolina. **See attached Exhibit A.**

14.     As a result of an inadvertent error of the draftsman and/or mutual mistake of the parties involved, Lennie Locklear's name was misspelled in the grantee section of the Deed as "Linnie Locklear".

15.     Upon information and belief, Carolyn and Lennie Locklear ("Borrowers") made, executed and delivered to Meritage a Promissory Note in writing, wherein Borrowers promised to pay to Meritage the principal sum of $87,550.00.

16.     In order to secure payment of the Note, Borrowers executed and delivered to Meritage, on March 26, 1999 a Deed of Trust recorded March 31, 1999 in Book 1051 at Page 891 of the Robeson County Register of Deeds. **See attached Exhibit B.**

17.     On November 15, 2001, Borrowers made, executed and delivered to ABN Amro Mortgage Group, Inc. ("ABN") a Promissory Note in writing, wherein Borrowers promised to pay to Lender the principal sum of $83,000.00 together with interest at the rate of 6.75% per annum

3

on the unpaid balance (hereinafter the "Note"); said principle and interest being payable in monthly installments thereafter until the Note is fully paid. **See attached Exhibit C.**

18.     In order to secure payment of the Note, Borrowers executed and delivered to ABN, its successors and assigns, a Deed of Trust, dated November 15, 2001, and recorded January 29, 2002 in Book 1211 at Page 0565 of the Robeson County Register of Deeds (the "Deed of Trust"). **See attached Exhibit D**. The Deed of Trust was intended to cover the Property.

19.     The proceeds from the Note in Exhibit C were used to pay off the Note to Meritage as evidenced by the United States Department of Housing and Urban Development Settlement Statement ("HUD-1") statement from the transaction. A copy of the HUD-1 is attached hereto as **Exhibit E**. Upon information and belief, no satisfaction of Meritage's Deed of Trust was ever recorded with the Robeson County Register of Deeds.

20.     Plaintiff is the current holder of the Note and Deed of Trust in Exhibits C and D and is entitled to enforce the terms and conditions.

21.     As a result of an inadvertent error of the draftsman and/or mutual mistake of the parties involved, the Deed of Trust in Exhibit D included an incorrect legal description pertaining to another property owned by the Borrowers. The legal description that was intended to describe the Property to be encumbered by the Deed of Trust is described as:

>    Lying and being in Shannon Township, Robeson County, North Carolina, about 2.9 miles Northeast of the Town of Red Springs, about 0.2 miles Southeast of the intersection of Secondary Road No. 1505 with Secondary Road No. 1779 and on the Northeast side of and adjoining Secondary Road No, 1779.  Bounded on the Southwest by Secondary Road No. 1779, on the Northwest by Pearl L. McGirt and on all other sides by other lands of Naomi L. Locklear and being more particularly described as follows:

4

Beginning at a point in the centerline of the ditch which is a West line of the tract of which this is a part, said point being at the intersection of the Northeast right-of-way (30 feet from center) of Secondary Road No. 1779 and the most Western line of the tract of which this is a part, the center of the ditch and runs thence as the right-of-way of Secondary Road No. 1779 South 55 degrees 00 minutes East (7.00 feet to an iron rod in said right-of-way) a total distance of 145.11 feet to an iron rod in said right-of-way; thence North 35 degrees 00 minutes East 175.00 feet to an iron rod; thence North 55 degrees 00 minutes West (98.74 feet to an iron rod on the bank of the ditch) a total distance of 103.81 feet to a point in the ditch which is a Western line of the tract of which this is a part; thence as said centerline of a ditch South 48 degrees 16 minutes 40 seconds West 179.81 feet to the BEGINNING, containing 0.50 acres, said lands being Lot No. 1 of the Fodie Locklear Estate Division as shown on a map recorded in Map Book 13, Page 26, Robeson County Registry.

### First Claim for Relief
### (Reformation of Deed)

22.     The allegations of the preceding paragraphs are incorporated herein by reference.

23.     The Deed lists the grantees as "Carolyn Locklear and husband, Linnie Locklear."

24.     The Deed should have listed the grantees as "Carolyn Locklear and husband, Lennie Locklear."

25.     The incorrect spelling of Lennie Locklear's name resulted from an inadvertent error of the draftsman and/or mutual mistake of the parties.

26.     The Deed does not represent the intent or understanding of the parties due to the incorrect spelling of Lennie Locklear's name.

27.     The grantors intended to convey the Property to the Borrowers by virtue of the Deed despite the incorrect spelling of Lennie Locklear's name.

28.     The Court should reform the Deed to include the correct spelling of Lennie

5

Locklear's name.

## Second Claim for Relief
### (Reformation of Deed of Trust)

29. The allegations of the preceding paragraphs are incorporated herein by reference.

30. Although the Deed of Trust failed to include the intended legal description for the Property at the time of its execution and recorded, the Deed of Trust contained the property address of the Property intended to have been encumbered by the Deed of Trust, said address being 508 Fodiesville Road, Shannon, NC 28386. Thereby, the four corners of the document placed creditors on constructive notice of the encumbrance.

31. A reasonable title searcher would have found and identified the December 11, 1995 Deed and the November 15, 2001 Deed of Trust as an encumbrance on the title to the Property.

32. The intent of all parties that the legal description described in paragraph twenty-one (21) above should have been included in the Deed of Trust is further evidenced by HUD-1 attached as Exhibit E associated with the closing of the Deed of Trust. The HUD-1 identifies the property intended to be encumbered by the Deed of Trust as 508 Fodiesville Rd., Shannon, NC 28386.

33. The failure to include the intended legal description with the Deed of Trust was caused by inadvertent scrivener's error and/or mutual mistake of the parties, and Plaintiff is entitled to have the Deed of Trust reformed to include the intended legal description of the Property as described in paragraph twenty-one (21), above.

34. Plaintiff is entitled to have the reformation relate back, *nunc pro tunc*, to the original recording of the Deed of Trust on January 29, 2002.

6

### Third Claim for Relief
### (Declaratory Judgment – Deed)

35.     The allegations of the preceding paragraphs are incorporated herein by reference.

36.     The Deed evidences the conveyance of the Property from the grantors to the Borrowers despite the incorrect spelling of Lennie Locklear's name.

37.     The Deed was drafted and recorded in a manner sufficient to give a reasonable title searcher notice of the Borrower's interest in the Property.

38.     Plaintiff is entitled to a declaration by the Court that the Deed is a valid conveyance of the Property despite the incorrect spelling of Lennie Locklear's name.

### Fourth Claim for Relief
### (Declaratory Judgment – Deed of Trust)

39.     The allegations of the preceding paragraphs are incorporated herein by reference.

40.     Plaintiff is entitled to a declaration by the Court that the Deed of Trust is a valid First Lien Deed of Trust on the Property.

41.     The Deed of Trust was drafted and recorded in a manner sufficient to give a reasonable title searcher notice of its claim to have the lien on the Property in the amount of $83,000.00 as the Deed of Trust correctly listed the address as being: 508 Fodiesville Rd. Shannon, NC 28386.

42.     Borrowers were provided with $83,000.00 under the circumstances where the holder of the Note and Deed of Trust reasonably expected to receive consideration in the form of a lien on the Property to secure repayment.

43.     Upon information and belief, Mortgagors and the other Defendants in this action knew or should have known that the holder of the Note and Deed of Trust expected a lien on the

7

Property as consideration.

44.    Plaintiff is entitled to a declaration that Defendants Carolyn Locklear and Lennie Locklear a/k/a Linnie Locklear are record owners of the Property subject to a valid First Lien Position of the Plaintiff.

**Fifth Claim for Relief**
**(Equitable Subrogation)**

45.    The allegations of the preceding paragraphs are incorporated herein by reference.

46.    Plaintiff loaned money to the Borrowers in order to extinguish a prior encumbrance in favor of Defendant Meritage Mortgage Company.

47.    The money that Plaintiff loaned the Borrowers was used to pay off Meritage's encumbrance as exhibited by the attached HUD-1.

48.    Plaintiff loaned the Borrowers the money with the expectation that paying off the Meritage encumbrance would give it a valid first priority lien on the Property.

49.    There is no intervening encumbrance to the Property between the dates that Meritage recorded its Deed of Trust on March 26, 1999 and when Plaintiff filed its Deed of Trust on January 29, 2002.

50.    Defendants Lumbee Guaranty Bank, the United States of America acting by and through its agency the Internal Revenue Service, and the North Carolina Department of Revenue will not be prejudiced by Plaintiff being subrogated into Meritage's position because at the time the filed their liens and/or judgments against the Borrowers they were aware or should have been aware that there were two unsatisfied Deeds of Trust on the Property according to the Robeson Register of Deeds.

8

51.     Plaintiff is entitled to an Order from this Court stating that Plaintiff subrogated to the rights of Meritage due to the fact that Plaintiff satisfied Meritage's claim to the Property under its Deed of Trust.

52.     Plaintiff is also entitled to an Order stating that due its subrogated position it has a valid first lien on the Property superior to the liens of any Defendant in this instant lawsuit.

### Sixth Claim for Relief
### (Judicial Foreclosure)

53.     The allegations of the preceding paragraphs are incorporated herein by reference.

54.     The Note contains a provision in Paragraph 3(A) entitled "Time and Place of Payments" which reads in pertinent part

> I will pay principal and interest by making a payment every month. I will make my monthly payment on the 1st day of each month beginning January 1, 2002. I will make these payments every month until I have paid all principal and interest and any other charges described below that I may owe under this note . . ..

55.     The Note also contains a provision in Paragraph 3(B) entitled "Amount of Monthly Payments which reads:

> My monthly payment will be in the amount of U.S. $631.10.

56.     There is a further provision in Paragraph 6(B) entitled Default which reads:

> If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

57.     Paragraph 1 of the Deed of Trust's UNIFORM COVENANTS section entitled "Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges" states in pertinent part:

> Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note . . .

9

58.     The Deed of Trust also contains a provision in Paragraph 22 of the NON-UNIFORM COVENANTS section entitled "Acceleration; Remedies" that states that after providing notice of default that the "Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale. Pursuant to the Deed of Trust, Plaintiff may foreclose on the Property in the event of such a default.

59.     Defendants Carolyn Locklear, Lennie Locklear a/k/a Linnie Locklear defaulted under the Note and Deed of Trust by failing to make the payments thereunder as and when due.

60.     Plaintiff has made demand for repayment of the outstanding balance due on the Note but it has not been paid.

61.     The loan is in default for the payments due on July 1, 2008 and subsequent months.

62.     Plaintiff has elected to foreclose by way of judicial foreclosure pursuant to N.C. Gen. Stat. § 1-339.1, *et seq.* and is entitled to sell the Property towards satisfaction of the debt.

<u>**Seventh Claim for Relief**</u>
**(Breach of Contract)**

63.     The allegations of the preceding paragraphs are incorporated herein by reference.

64.     A valid contract exists between Defendants Carolyn Locklear, Lennie Locklear a/k/a Linnie Locklear and Plaintiff whereby they agreed to make monthly payments to Plaintiff.

65.     Defendants Carolyn Locklear, Lennie Locklear a/k/a Linnie Locklear breached the terms of the contract with Plaintiff by failing and refusing to make the monthly payments required by the Note and Deed of Trust.

10

66. The Plaintiff is entitled to recover the sum of $*63,651.73* together with interest at 6.75% from the *July 1, 2008* until judgment, and thereafter at the highest legal rate until paid, with any late charges, and fees and costs, including attorney's fees, as authorized by law.

67. Plaintiff has performed or there have occurred all conditions precedent to its recovery under this claim for relief.

**WHEREFORE**, Plaintiff prays the Court as follows:

1. That the Court reform the Deed to include the correct spelling of Lennie Locklear's name and that such reformation shall relate back, *nunc pro tunc*, to the date the Deed was executed and recorded;

2. That the Court declare the Deed is a valid conveyance of the Property;

3. The Court declare that the Deed of Trust was drafted and recorded in a manner sufficient to give a reasonable title searcher notice of the interest of the Plaintiff's lien on the property located at 508 Fodiesville Rd. Shannon, NC 28386;

4. That the Court reform the Deed of Trust recorded in Book 1211 Page 0565 in the Robeson County, North Carolina Register of Deeds to include the legal description as follows:

> Lying and being in Shannon Township, Robeson County, North Carolina, about 2.9 miles Northeast of the Town of Red Springs, about 0.2 miles Southeast of the intersection of Secondary Road No. 1505 with Secondary Road No. 1779 and on the Northeast side of and adjoining Secondary Road No, 1779. Bounded on the Southwest by Secondary Road No. 1779, on the Northwest by Pearl L. McGirt and on all other sides by other lands of Naomi L. Locklear and being more particularly described as follows:

11

> Beginning at a point in the centerline of the ditch which is a West line of the tract of which this is a part, said point being at the intersection of the Northeast right-of-way (30 feet from center) of Secondary Road No. 1779 and the most Western line of the tract of which this is a part, the center of the ditch and runs thence as the right-of-way of Secondary Road No. 1779 South 55 degrees 00 minutes East (7.00 feet to an iron rod in said right-of-way) a total distance of 145.11 feet to an iron rod in said right-of-way; thence North 35 degrees 00 minutes East 175.00 feet to an iron rod; thence North 55 degrees 00 minutes West (98.74 feet to an iron rod on the bank of the ditch) a total distance of 103.81 feet to a point in the ditch which is a Western line of the tract of which this is a part; thence as said centerline of a ditch South 48 degrees 16 minutes 40 seconds West 179.81 feet to the BEGINNING, containing 0.50 acres, said lands being Lot No. 1 of the Fodie Locklear Estate Division as shown on a map recorded in Map Book 13, Page 26, Robeson County Registry.

5.    That the Court enter an Order that such reformation relate back to the date of the original recording date of the Deed of Trust on January 29, 2002, *nunc pro tunc*;

6.    The Court declare Plaintiff has a valid and enforceable First Lien Position on the Property, superior to the interests of any other parties to this action;

7.    That the Court's Order, granting reformation of the Deed of Trust, shall be duly recorded in the Robeson County Register of Deeds, and indexed according to those parties named in said Deed of Trust;

8.    In the alternative, that the Court declares that Defendants Carolyn Locklear and Lennie Locklear a/k/a Linnie Locklear holds the Property described herein subject to a constructive trust and equitable lien to the benefit of the Plaintiff;

9.    That the Court authorizes the foreclosure of the Property under the Note and Deed of Trust and that the usual judgment be made for the sale of the Property;

10.    That a Commissioner be appointed to conduct a public sale for the Property;

12

11.     That the Court award Plaintiff's the costs and expenses incurred as a result of this

matter against the Defendants Carolyn Locklear, Lennie Locklear a/k/a Linnie Locklear.

12.     For such other and further relief as the Court deems just and proper.

This the 24th day of July_____, 2015.


**BROCK & SCOTT, PLLC**

Franklin L. Greene NC Bar# 37896
5121 Parkway Plaza Blvd
Charlotte, NC 28217
Phone: 704-643-0290
Fax: 704-553-7225
Franklin.Greene@brockandscott.com
Attorney for Bayview Loan Servicing, LLC

13

### NOTICE REQUIRED BY THE FAIR DEBT
### COLLECTION PRACTICES ACT
#### 15 U.S.C. Section 1601, As Amended

-The amount of the debt as of _July 8th_, 2015, is the principal sum of $_163,161.33_ ; with, interest from the date that the last payment was made, advances, late charges, and the costs and disbursements of this action.

-The creditor to whom the debt is owed is named: **Bayview Loan Servicing, LLC**

- Unless the consumer, within thirty days after the receipt of this notice, disputes the validity of the debt or any portion thereof, the debt will be assumed to be valid by our office.

-If the consumer notifies our office in writing within thirty days from the receipt of this notice that the debt, or any portion thereof, is disputed, our office will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by our office.

-Upon the consumer's written request within thirty days from the receipt of this notice, our office will provide the consumer with the name and address of the original creditor, if different from the current creditor.

-Written requests should be addressed to Brock & Scott, PLLC, Complex Litigation, 5121 Parkway Plaza Blvd, Charlotte, NC 28217, for this matter.

**\*\*\* THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. IF YOU HAVE BEEN DISCHARGED IN A CHAPTER SEVEN BANKRUPTCY, WE ARE NOT SEEKING PERSONAL LIABILITY AGAINST YOU, BUT ARE PURSUING THE RIGHTS AGAINST THE PROPERTY AS PROVIDED IN THE SECURITY AGREEMENTS\*\*\***

14

STATE OF ____Florida____ :

COUNTY OF ____Miami-Dade____ :

## VERIFICATION

____Edilia Perez____, being duly sworn, deposes and says that (s)he is the ____FCL Doc Coordinator____ of **Bayview Loan Servicing, LLC**, Plaintiff in the above referenced action, and as such is authorized to make this verification; that (s)he has read the foregoing **Verified Complaint**, and that the facts set forth therein are true to his/her own knowledge, except as to matters therein set forth upon information and belief, and as to such matters, (s)he believes them to be true.

Name: ____Edilia Perez____

Title: ____FCL Doc Coordinator____

STATE OF ____Florida____ :

COUNTY OF ____Miami-Dade____ :

Sworn to and subscribed before me this the 8th day of ____July____, 2015, by ____Edilia Perez____.

_____
Notary Public            Heather Castiglione

HEATHER CASTIGLIONE
Notary Public - State of Florida
My Comm. Expires Oct 17, 2017
Commission # FF 063936

My Commission Expires: ____10/17/2017____

*This verification is for the action named Bayview Loan Servicing, LLC vs Carolyn Locklear, Lennie Locklear a/k/a Linnie Locklear, Meritage Mortgage Corporation, Lumbee Guaranty Bank, the United States of America acting by and through its agency the Internal Revenue Service, and the North Carolina Department of Revenue*

15

# EXHIBIT A

5

BOOK    PAGE

888    0005

FILED
JOE B. FREEMAN
R OF D

Dec 12  10 52 AM '95

ROBESON COUNTY

| Excise Tax | Recording Time, Book and Page |
|---|---|

Tax Lot No. ................................................. Parcel Identifier No. ...............................................

Verified by ................................................ County on the ........ day of .................................., 19......

by ...............................................................................................................................................

Mail after recording to ...... LOCKLEAR, JACOBS, SUTTON & HUNT ....................... t...........

.....................................................................................................................................

This instrument was prepared by ...... Arlie Jacobs/cl ................................................

Brief description for the Index

# NORTH CAROLINA GENERAL WARRANTY DEED

THIS DEED made this 11th ...... day of ...... December .................., 1995 ...... by and between

| GRANTOR | GRANTEE |
|---|---|
| JEFF LOCKLEAR and wife, RETHA JANE LOCKLEAR<br><br>Of Robeson County, North Carolina | CAROLYN LOCKLEAR and husband, LINNIE LOCKLEAR<br><br>Rt. 1 Box 18N<br>Shannon, NC 28386 |

Enter in appropriate block for each party: name, address, and, if appropriate, character of entity, e.g. corporation or partnership.

The designation Grantor and Grantee as used herein shall include said parties, their heirs, successors, and assigns, and shall include singular, plural, masculine, feminine or neuter as required by context.

WITNESSETH, that the Grantor, for a valuable consideration paid by the Grantee, the receipt of which is hereby acknowledged, has and by these presents does grant, bargain, sell and convey unto the Grantee in fee simple, all that certain lot or parcel of land situated in the City of ......................................... Shannon .................. Township,

Robeson ............. County, North Carolina and more particularly described as follows:

Lying and being in Shannon Township, Robeson County, North Carolina, about 2.9 miles Northeast of the Town of Red Springs, about 0.2 miles Southeast of the intersection of Secondary Road No. 1505 with Secondary Road No. 1779 and on the Northeast side of and adjoining Secondary Road No. 1779. Bounded on the Southwest by Secondary Road No. 1779, on the Northwest by Pearl L. McGirt and on all other sides by other lands of Naomi L. Locklear and being more particularly described as follows:

BEGINNING at a point in the centerline of the ditch which is a West line of the tract of which this is a part, said point being at the intersection of the Northeast right-of-way (30 feet from center) of Secondary Road No. 1779 and the most Western line of the tract of which this is a part, the center of the ditch and runs thence as the right-of-way of Secondary Road No. 1779 South 55 degrees 00 minutes East (7.00 feet to an iron rod in said right-of-way) a total distance of 145.11 feet to an iron rod in said right-of-way; thence North 35 degrees 00 minutes East 175.00 feet to an iron rod;

thence North 55 degrees 00 minutes West (98.74 feet to an iron rod on the bank of a ditch) a total distance of 103.81 feet to a point in the ditch which is a Western line of the tract of which this is a part; thence as said centerline of the ditch South 48 degrees 16 minutes 40 seconds West 179.81 feet to the BEGINNING, containing 0.50 acres, said lands being Lot No. 1 of the Fodie Locklear Estate Division as shown on a map recorded in Map Book 13, Page 26, Robeson County Registry.

The property hereinabove described was acquired by Grantor by instrument recorded in .................................................. page ..........

.......................................................................

A map showing the above described property is recorded in Plat Book .............................................................

TO HAVE AND TO HOLD the aforesaid lot or parcel of land and all privileges and appurtenances thereto belonging to the Grantee in fee simple.

And the Grantor covenants with the Grantee, that Grantor is seized of the premises in fee simple, has the right to convey the same in fee simple, that title is marketable and free and clear of all encumbrances, and that Grantor will warrant and defend the title against the lawful claims of all persons whomsoever except for the exceptions hereinafter stated.

Title to the property hereinabove described is subject to the following exceptions:

All such easements and restrictions that might appear of record or view of the site.

IN WITNESS WHEREOF, the Grantor has hereunto set his hand and seal, or if corporate, has caused this instrument to be signed in its corporate name by its duly authorized officers and its seal to be hereunto affixed by authority of its Board of Directors, the day and year first above written.

_____      JEFF LOCKLEAR _____(SEAL)
(Corporate Name)

BY: _____      RETHA JANE LOCKLEAR _____(SEAL)

_____President      _____(SEAL)

ATTEST:

_____Secretary (Corporate Seal)      _____(SEAL)

NORTH CAROLINA, _____Robeson_____ County.

I, a Notary Public of the County and State aforesaid, certify that _____

_____Jeff Locklear and wife, Retha Jane Locklear_____ Grantor,

personally appeared before me this day and acknowledged the execution of the foregoing instrument. Witness my hand and official stamp or seal, this ____ day of _____December_____, 19 95.

My commission expires: __July 17, 2000__ _____ Notary Public

SEAL-STAMP      NORTH CAROLINA, _____ County.

I, a Notary Public of the County and State aforesaid, certify that _____ Secretary of _____ personally came before me this day and acknowledged that .... he is _____ Secretary of _____ a North Carolina corporation, and that by authority duly given and as the act of the corporation, the foregoing instrument was signed in its name by its _____ President, sealed with its corporate seal and attested by .... as its _____ Secretary.

Witness my hand and official stamp or seal, this _____ day of _____ 19 ......

My commission expires: _____ _____ Notary Public

The foregoing Certificate(s) of _____Connie L. Lowry, Notary Public_____

is/are certified to be correct. This instrument and this certificate are duly registered at the date and time and in the Book and Page shown on the first page hereof.

_____Joe B. Freeman_____ REGISTER OF DEEDS FOR ____Robeson____ COUNTY

By ____Charlie C. Biss____ Deputy/Assistant - Register of Deeds

# EXHIBIT B

891

Prepared by/Return:
H. C. Stevens, AAL
439 Westwood Center, STE 157
Fayetteville, NC 28314

FILED R OF D
VICKI L. LOCKLEAR

Mar 31  3 05 PH '99

ROBESON COUNTY

BOOK          PAGE
Prepared By: H. C. STEVENS, 1051    891
AAL

Loan Number: 18990078

————— [Space Above This Line For Recording Data] —————

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on     March 26, 1999          . The grantor is
LINNIE LOCKLEAR AND CAROLYN LOCKLEAR, HUSBAND AND WIFE

("Borrower"). The trustee is
H.C. STEVENS
2151 SKIBO ROAD, SUITE 110, FAYETTEVILLE, NC  28314
("Trustee"). The beneficiary is MERITAGE MORTGAGE CORPORATION,
AN OREGON CORPORATION
which is organized and existing under the laws of               OREGON              , and whose
address is 5665 SOUTHWEST MEADOWS ROAD, SUITE 350
LAKE OSWEGO, OR  97035
                                          ("Lender"). Borrower owes Lender the principal sum of
Eighty-Seven Thousand Five Hundred Fifty & 00/100
                                          Dollars (U.S. $87,550.00          ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on     April 01, 2014          .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee and Trustee's
successors and assigns, in trust, with power of sale, the following described property located in
            ROBESON                                                    County, North Carolina:

SEE ATTACHED EXHIBIT A

Parcel Number: 02 01103

which has the address of  508 FODIESVILLE ROAD, SHANNON                              [Street, City],
North Carolina  28386        [Zip Code]  ("Property Address");
NORTH CAROLINA-Single Family-FNMA/FHLMC
UNIFORM INSTRUMENT Form 3034 9/90
                                          Amended 12/93
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 6    Initials: LL  CL
D5S-NCD

892

TO HAVE AND TO HOLD this property unto Trustee and Trustee's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

Form 3034  9/90

Page 2 of 6

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

payment may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument, but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

Form 3034  9/90

@BRNCI-6S08(GA) 61                                Page 4 of 5

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with applicable law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as applicable law may require. After the time required by applicable law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but

**-6H(NC)** (9504).01
**005.NCO**

Page 5 of 8

Form 3034 9/90
Initials: _____

896

not limited to, Trustee's fees of _____ % of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The interest rate set forth in the Note shall apply whether before or after any judgment on the indebtedness evidenced by the Note.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall cancel this Security Instrument to Borrower. If Trustee is requested to release this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**23. Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☒ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ V.A. Rider | ☐ Other(s) [specify] | |

**BY SIGNING UNDER SEAL BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____ _____ (Seal)
                                LINNIE LOCKLEAR                          DATE -Borrower

_____ _____ (Seal)
                                CAROLYN LOCKLEAR                       -Borrower

_____ (Seal) _____ (Seal)
                        -Borrower                                                          -Borrower

STATE OF NORTH CAROLINA,                                   Robeson              County ss:
I, Dina Owen Mathis,
of the County of Cumberland              , a Notary Public , State of North Carolina, do hereby certify that

Linnie Locklear & Carolyn Locklear                                personally appeared before

me this day and acknowledged the due execution of the foregoing instrument.
Witness my hand and official seal this   20th  day of  March         , 1999.

My Commission Expires:  Dec 2, 20___        John Owen Mathis
                                                                    Notary Public

STATE OF NORTH CAROLINA,                                   Robeson              County ss:
The foregoing certificate of
a Notary Public of the County of Cumberland,   John Owen Mathis
certified to be correct.  State of  NC                                         , is
This      31      day of  March           , 1999.

                                                       Register of Deeds, Locklear
                                                    By Marie C. Brisson
                                                              Deputy Assistant

-6H(NC) (9606).01
Page 6 of 6                                                                      Form 3034  3/90

008-6CO

                                                                    BOOK        PAGE
                                                                    1051         896

897

BOOK 1051   PAGE 897

# EXHIBIT "A"

Lying and being in Shannon Township, Robeson County, North Carolina, about 2.9 miles Northeast of the Town of Red Springs, about 0.2 miles Southwest of the intersection of Secondary Road No. 1505 with Secondary Road No. 1779 and on the Northeast side of and adjoining Secondary Road No. 1779.  Bounded on the Southwest by Secondary Road No. 1779, on the Northwest by Pearl L. McGirt and on all other sides by other lands of Naomi L. Locklear and being more particularly described as follows:

BEGINNING at a point in the centerline of the ditch which is a West line of the tract of which this is a part, said point being at the intersection of the Northeast right-of-way (30 feet from center) of Secondary Road No. 1779 and the most Western line of the tract of which this is a part; the center of the ditch and runs thence as the right-of-way of Secondary Road No. 1779 South 55 degrees 00 minutes East (7.00 feet to an iron rod in said right-of-way) a total distance of 145.11 feet to an iron rod in said right-of-way; thence North 35 degrees 00 minutes East 175.00 feet to an iron rod; thence North 55 degrees 00 minutes West (98.74 feet to an iron rod on the bank of a ditch) a total distance of 103.81 feet to a point in the ditch which is a Western line of the tract of which this is a part; thence as said centerline of the ditch South 48 degrees 16 minutes 40 seconds West 179.81 feet to the BEGINNING, containing 0.50 acres, said lands being Lot No. 1 of the Fodie Locklear Estate Division as shown on a map recorded in Map Book 13, Page 26, Robeson County Registry.

INSTRUMENT PRESENTED AND RECORDED
IN POOR QUALITY CONDITION

898

## BALLOON PAYMENT RIDER

THIS RIDER is attached to and made a part of that certain Deed of Trust from
LINNIE LOCKLEAR AND CAROLYN LOCKLEAR, HUSBAND AND WIFE

to MERITAGE MORTGAGE CORPORATION,
AN OREGON CORPORATION
dated MARCH 26, 1999      , in the principal amount of $    87,550.00

Your monthly payments on the above loan are based on an amortization period of 360 months.
However, your loan will be payable in full at the end of 180 months. As a result, you will have a balloon
payment due on APRIL 1, 2014

A balloon payment exists when your monthly installments of principal and interest do not fully reduce
your debt obligation by the end of your loan period. The balance of the loan which remains unpaid when
your loan matures is due in one lump sum. This lump sum is known as a balloon payment.

_____      _____
LINNIE LOCKLEAR      DATE

_____      _____
CAROLYN LOCKLEAR      DATE

DDS-TRE

# EXHIBIT C



# NOTE

| NOVEMBER 15, 2001 | INDIANAPOLIS, | INDIANA |
|---|---|---|
| [Date] | [City] | [State] |

508 FODIESVILLE RD, SHANNON, NC 28386
[Property Address]

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $83,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is ABN AMRO MORTGAGE GROUP, INC., A DELAWARE CORPORATION.

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.750%.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the 1ST day of each month beginning on JANUARY 1, 2002. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on DECEMBER 1, 2021, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
4242 N. HARLEM AVE.
NORRIDGE, IL 60706
ATTN: CASHIERING
or at a different place if required by the Note Holder.
(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $631.10.

**4. BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**
(A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
(C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
(D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
(E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

Initials: _LL CL_

MULTISTATE FIXED RATE NOTE–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3200 1/01
© 1999-2001 Online Documents, Inc. Page 1 of 2 F3200NOT 0105

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (SEAL)
LENNIE LOCKLEAR
Lennie LL

_____ (SEAL)
CAROLYN LOCKLEAR

PAY TO THE ORDER OF


WITHOUT RECOURSE
ABN AMRO MORTGAGE GROUP, INC.

_____
MARGARET A. BEZY
VICE PRESENT

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3200 1/01
© 1999-2001 Online Documents, Inc.  Page 2 of 2  F3200NOT

# EXHIBIT D

When recorded mail to: ARCHER LAND TITLE INC. 212 W. 10TH ST. SUITE F-175 INDIANAPLOIS IN
ABN AMRO MORTGAGE GROUP, INC.                                                                    46202
P.O. BOX 5064
TROY, MICHIGAN 48084
ATTN:FINAL/TRAILING DOCUMENTS

This instrument was prepared by    out of State

FILED R.OF D
VICKI L. LOCKLEAR

2002 JAN 29  A II: 29

LOAN #: 617787885                                                            ROBESON COUNTY

—————————————————[Space Above This Line For Recording Data]—————————————————

## DEED OF TRUST

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and
21  Certain rules regarding the usage of words used in this document are also provided in Section 16.
**(A)  "Security Instrument"** means this document, which is dated    **NOVEMBER 15, 2001,**    together with all Riders
to this document
**(B)  "Borrower"** is  **LINNIE LOCKLEAR, A WIFE AND HUSBAND JOINT TENANTS WITH RIGHT OF
SURVIVORSHIP AND CAROLYN LOCKLEAR, A WIFE AND HUSBAND JOINT TENANTS WITH RIGHT OF
SURVIVORSHIP.**

Borrower is the trustor under this Security Instrument
**(C)  "Lender"** is  **ABN AMRO MORTGAGE GROUP, INC.**

Lender is a  **CORPORATION**                                          organized and existing under the laws of
**DELAWARE.**                                        Lender's address is  **2600 W. BIG BEAVER RD., TROY,
MICHIGAN 48084.**

Lender is the beneficiary under this Security Instrument.
**(D)  "Trustee"** is  .

**(E)  "Note"** means the promissory note signed by Borrower and dated **NOVEMBER 15, 2001.**    The Note states
that Borrower owes Lender  *******************************************EIGHTY THREE THOUSAND AND NO/100
****************************************************  Dollars (U.S.        **$83,000.00** )
plus interest  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
**DECEMBER 1, 2021.**
**(F)  "Property"** means the property that is described below under the heading "Transfer of Rights in the Property "
**(G)  "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and
all sums due under this Security Instrument, plus interest
**(H)  "Riders"** means all Riders to this Security Instrument that are executed by Borrower  The following Riders are to be executed
by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☐ Condominium Rider                    ☐ Second Home Rider
☐ Balloon Rider                  ☐ Planned Unit Development Rider       ☐ Other(s) [specify]
☐ 1-4 Family Rider               ☐ Biweekly Payment Rider

**(I)  "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative
rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions
**(J)  "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed
on Borrower or the Property by a condominium association, homeowners association or similar organization
**(K)  "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper
instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order,
instruct, or authorize a financial institution to debit or credit an account  Such term includes, but is not limited to, point-of-sale
transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L)  "Escrow Items"** means those items that are described in Section 3
**(M)  "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other
than insurance proceeds paid under the coverages described in Section 5) for  (i) damage to, or destruction of, the Property; (ii)

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Initials:
Form 3034 1/01                                    Page 1 of 8                               NCUDEED  0109

LOAN #1

condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee and Trustee's successors and assigns, in trust, with power of sale, the following described property located in the      COUNTY                                                                    [Type of Recording Jurisdiction] of
ROBESON                                                   [Name of Recording Jurisdiction]:

    A certain tract or parcel of land in Roberson County, in the State of North Carolina, described as follows

    Being all of Lot No. Twelve (12) as shown on that certain map entitled "Shannon Heights, Section II," prepared by John D. Powes Surveying, and duly recorded on June 7, 1994, in Book of Maps No. Thirty-Three (33), at page Sixty-Six (66), Roberson County Registry, to which said map reference is hereby made for a more particular description of said property and the same is incorporated as a part hereof

    Property Address:(for informational purposes only)
    508 Fodiesville Rd.
    Shannon, NC 28386

which currently has the address of    **508 FODIESVILLE RD, SHANNON,**
                                                                            [Street] [City]

North Carolina      **28386**           ("Property Address"):
               [Zip Code]

    TO HAVE AND TO HOLD this property unto Trustee and Trustee's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    **1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

    Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. If Borrower has breached any covenant or agreement in this Security Instrument and Lender has accelerated the obligations of Borrower hereunder pursuant to Section 22 then Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2.  Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any

NORTH CAROLINA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3034 1/01                                            Page 2 of 8                        Initials: _____  C.L.
                                                                                 NCUDEED

remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items " At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time  Any such waiver may only be in writing  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower. (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires  What Lender requires pursuant to the preceding sentences can change during the term of the Loan  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either  (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

NORTH CAROLINA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3034 1/01                                                              Page 3 of 8                                         Initials: _____
                                                                                                                                                          NCUDEED

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3034 1/01
Page 4 of 8

Initials: _[signature]_
NCUDEED

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve, if permitted under Applicable Law, in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve, if permitted under Applicable Law. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction. (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

NORTH CAROLINA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3034 1/01

Page 5 of 8

Initials: _JL_ _CL_
NCUDEED

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"). (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred

Case 7:15-cv-00220-D    Document 1-1    Filed 10/07/15    Page 39 of 72

for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender. (a) cash, (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21 (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows.

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with Applicable Law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of _____ of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The interest rate set forth in the Note shall apply whether before or after any judgment on the indebtedness evidenced by the Note.

NORTH CAROLINA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3034 1/01                                              Page 7 of 8

Initials: _____
NCUDEED

LOAN #:

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall cancel this Security Instrument. If Trustee is requested to release this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Attorneys' Fees.** Attorneys' fees must be reasonable.

BY SIGNING UNDER SEAL BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
LENNIE LOCKLEAR
Lennie X T

_____ (Seal)
CAROLYN LOCKLEAR

State of NORTH CAROLINA,                    Robeson                    County ss:

I, _Tracey S. Dunlar_ a Notary Public of the County of, Robeson State of North Carolina, do hereby certify that LENNIE LOCKLEAR AND CAROLYN LOCKLEAR, personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal this _16_ day of _November 2001_ .

My commission expires: _4/3/2006_

_Tracey S. Dunlar_
Notary Public

North Carolina Robeson County
The foregoing certificate of
_Tracey S. Dunlar_
is certified to be correct. Notary                    Public
This _27th_ day of _Nov_ , 20 _02_
_Frankie C. Bro_ Deputy/Asst.
Vicki L. Locklear                    Register of Deeds

Case 7:15-cv-00220-D    Document 1-1    Filed 10/07/15    Page 41 of 72

# EXHIBIT E

| A. | | | B. TYPE OF LOAN |
|---|---|---|---|
| | | | 1. ☐ FHA  2. ☐ FmHA  3. ☐ CONV.UNIN |
| **U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT** | | | 4. ☐ VA  5. ☒ CONV. INS. |
| **SETTLEMENT STATEMENT** | | | 6. FILE NUMBER    7. LOAN NUMBER |
| | | | 8. MORTGAGE INSURANCE CASE NUMBER |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. NAME AND ADDRESS OF BORROWER | E. NAME AND ADDRESS OF SELLER |
|---|---|
| LINNIE LOCKLEAR<br>CAROLYN LOCKLEAR<br>508 FODIESVILLE<br>SHANNON, NC 28386 | |
| F. NAME AND ADDRESS OF LENDER<br>ABN AMRO MORTGAGE GROUP, INC.<br><br>2600 W. BIG BEAVER RD.<br>TROY, MICHIGAN 48084 | G. PROPERTY LOCATION:<br><br>508 FODIESVILLE RD<br>SHANNON, NC 28386 |
| H. SETTLEMENT AGENT<br>ARCHER LAND TITLE INC | PLACE OF SETTLEMENT<br>212 W 10TH ST A 390<br>INDIANAPOLIS, IN 46202 | I. SETTLEMENT DATE<br><br>11/15/2001 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER | | 400. GROSS AMOUNT DUE TO SELLER | |
| 101. Contract sales price | | 401. Contract sales price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes         to | | 406. City/town taxes         to | |
| 107. County taxes         to | | 407. County taxes         to | |
| 108. Assessments         to | | 408. Assessments         to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 120.   GROSS AMOUNT DUE FROM BORROWER | | 420.   GROSS AMOUNT DUE TO SELLER | |
| 200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT DUE SELLER | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | $83,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. Second mortgage loan | | 504. Payoff of first mortgage loan | |
| | | Principal Balance $ | |
| | | Interest $ | |
| | | Other $ | |
| 205. | | 505. Payoff of second mortgage loan | |
| | | Principal Balance $ | |
| | | Interest $ | |
| | | Other $ | |
| 206. | | 506. Second mortgage loan to Borrower | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes         to | | 510. City/town taxes         to | |
| 211. County taxes         to | | 511. County taxes         to | |
| 212. Assessments         to | | 512. Assessments         to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 220.   TOTAL PAID BY/FOR BORROWER | | 520.   TOTAL REDUCTION AMOUNT DUE SELLER | |
| 300. CASH AT SETTLEMENT FROM/TO BORROWER | | 600. CASH AT SETTLEMENT TO/FROM SELLER | |
| 301. Gross amount due from borrower (line 120) | | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | ( ) | 602. Less reductions in amount due seller (line 520) | ( ) |
| 303. CASH ☐ FROM ☐ TO BORROWER | | 603. CASH ☐ TO ☐ FROM SELLER | |

GHD31  711
Previous Edition is Obsolete
HUD-1 (3-86)
RESPA, HB 4305.2

| L. SETTLEMENT CHARGES | | |
|---|---|---|
| **700. TOTAL SALES BROKER COMMISSION** | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
| based on price $ @ % = | | |
| Division of Commission (line 700) as follows: | | |
| 701. $ to | | |
| 702. $ to | | |
| 703. Commission paid at Settlement | | |
| 704. | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | |
| 801. Loan Origination Fee to HEARTLAND HOME FINANCE -M | $564.00 | |
| 802. Loan Discount | | |
| 803. Appraisal Fee $300.00 ($300.00 PD BY BORR POC) to ARSENAL APPRAISAL, INC. | | |
| 804. Credit Report | | |
| 805. Lender's Inspection Fee | | |
| 806. Mortgage Insurance Application Fee | | |
| 807. Assumption Fee | | |
| 808. | | |
| 809. PROCESSING FEE to HEARTLAND HOME FINANCE -M | $550.00 | |
| 810. | | |
| 811. COMMITMENT FEE to ABN AMRO MORTGAGE GROUP, | $375.00 | |
| 812. | | |
| 813. | | |
| 814. DEFERRED PREMIUM $830.00 ($830.00 PD BY ABN AMRO MORTGAGE GROUP, INC. POC) to HEARTLAND HOME FINANCE -M | | |
| 815. | | |
| 816. | | |
| 817. | | |
| 818. | | |
| 819. | | |
| 820. | | |
| 821. | | |
| 822. | | |
| 823. | | |
| 824. | | |
| 825. | | |
| 826. | | |
| 827. | | |
| 828. | | |
| 829. UNDERWRITING FEE to HEARTLAND HOME FINANCE -M | $140.00 | |
| 830. BROKER FEE to HEARTLAND HOME FINANCE -M | $439.00 | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | |
| 901. Interest from 11/20/2001 to 12/01/2001 @ $ 15.56 /day 11 | $171.16 | |
| 902. Mortgage Insurance Premium for months to | | |
| 903POC Hazard Insurance Premium for 1 years to CURRIE INS. AGENCY $466.00 | | |
| 904. Flood Ins. Premium years to | | |
| 905. | | |

Previous Edition is Obsolete

709
HUD-1 (3-86)
RESPA, HB 4305.2

| L. SETTLEMENT CHARGES | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|
| **1000. RESERVES DEPOSITED WITH LENDER** | | | | |
| 1001. | Hazard Insurance | 3 months @ $ 38.84 per month | $116.52 | |
| 1002. | Mortgage Insurance | months @ $ per month | | |
| 1003. | City property taxes | months @ $ per month | | |
| 1004. | County property taxes | 13 months @ $ 77.21 per month | $1,003.73 | |
| 1005. | Annual assessments | months @ $ per month | | |
| 1006. | Flood Insurance | months @ $ per month | | |
| 1007. | | months @ $ per month | | |
| 1008. | | months @ $ per month | | |
| 1009. | | months @ $ per month | | |
| 1010. | Aggregate Accounting Adjustment | | ($77.68) | |
| **1100. TITLE CHARGES** | | | | |
| 1101. Settlement or closing fee | | | | |
| 1102. Abstract or title search | | | | |
| 1103. Title examination | | | | |
| 1104. Title insurance binder | | | | |
| 1105. Document preparation | | | | |
| 1106. Notary fees | | | | |
| 1107. Attorney's fees | | | | |
| (includes above item numbers; | | | | |
| 1108. Title insurance | | | | |
| (includes above item numbers; | | | | |
| 1109. Lender's coverage | | | | |
| 1110. Owner's coverage | | | | |
| 1111. | | | | |
| 1112. | | | | |
| 1113. | | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | |
| 1201. Recording fees: Deed $ ; Mortgage $ ; Release $ | | | | |
| 1202. City/county tax/stamps: Deed $ ; Mortgage $ | | | | |
| 1203. State tax/stamps: Deed $ ; Mortgage $ | | | | |
| 1204. | | | | |
| 1205. | | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | | |
| 1301. Survey | | | | |
| 1302. Pest inspection | | | | |
| 1303. | | | | |
| 1304. | | | | |
| 1305. | | | | |
| 1306. | | | | |
| 1307. | | | | |
| 1308. | | | | |
| **1400. TOTAL SETTLEMENT CHARGES (enter on lines 103, Section J and 502, Section K)** | | | | |

The above settlement statement is hereby approved, the disbursements indicated are authorized, and settlement may be completed by settlement agent.

_____          _____
LINNIE LOCKLEAR                        CAROLYN LOCKLEAR

Previous Edition is Obsolete
HUD-1 0108
Hud-1 (3-86)
RESPA, HB 4305.2

## ACKNOWLEDGMENT OF RECEIPT OF SETTLEMENT STATEMENT

| | |
|---|---|
| **Borrower:** | Linnie Locklear and wife, Carolyn Locklear |
| **Lender:** | ABN AMRO Mortgage Group, Inc. |
| **Settlement Agent:** | Archer Land Title, Inc. |
| | (317)951-2363 |
| **Place of Settlement:** | 212 W. 10th Street, Suite A-390 |
| | Indianapolis, IN 46202 |
| **Settlement Date:** | November 15, 2001 |
| **Disbursement Date:** | November 20, 2001 |
| **Property Location:** | Rt. 1 Box 18N |
| | Shannon, NC 28386 |
| | Roberson County, North Carolina |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_____
Linnie Locklear
Leonie

_____
Carolyn Locklear


To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

_____
Archer Land Title, Inc.
Settlement Agent

WARNING: It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

(2001100299.PFD/2001100299/11)

OMB NO. 2502-0265

| B. TYPE OF LOAN: | | | | |
|---|---|---|---|---|
| 1. ☐ FHA | 2. ☐ FmHA | 3. ☒ CONV. UNINS. | 4. ☐ VA | 5. ☐ CONV. INS. |
| 6. FILE NUMBER: 2001100299 | | | 7. LOAN NUMBER | |
| 8. MORTGAGE INS CASE NUMBER: | | | | |

**A.**

U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT

**SETTLEMENT STATEMENT**

C. NOTE:  *This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "[POC]" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.*
10  3/98  (2001100299.PFD/2001100299/5)

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| Linnie Locklear and wife, Carolyn Locklear Rt. 1 Box 18N Shannon, NC 28386 | | ABN AMRO Mortgage Group, Inc. 2600 W. Big Beaver Road Troy, MI 48084 |

| G. PROPERTY LOCATION: Rt. 1 Box 18N Shannon, NC 28386 Roberson County, North Carolina | H. SETTLEMENT AGENT:        35-2070461 Archer Land Title, Inc. PLACE OF SETTLEMENT 212 W. 10th Street, Suite A-390 Indianapolis, IN 46202 | I. SETTLEMENT DATE: November 15, 2001 Disburse: 11/20/01 |
|---|---|---|

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 4,152.73 | 403. | |
| 104. First Mortgage Payoff to Litton Loan Servicing | 80,202.57 | 404. | |
| 105. | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. *City/Town Taxes          to | | 406. *City/Town Taxes          to | |
| 107. County Taxes               to | | 407. County Taxes               to | |
| 108. Assessments               to | | 408. Assessments               to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 84,355.30 | **420. GROSS AMOUNT DUE TO SELLER** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess Deposit (See instructions) | |
| 202. Principal Amount of New Loan(s) | 83,000.00 | 502. Settlement Charges to Seller (Line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. Broker Credit | 1,355.30 | 504. Payoff of first Mortgage | |
| 205. | | 505. Payoff of second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. *City/Town Taxes          to | | 510. *City/Town Taxes          to | |
| 211. County Taxes               to | | 511. County Taxes               to | |
| 212. Assessments               to | | 512. Assessments               to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 84,355.30 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Borrower (Line 120) | 84,355.30 | 601. Gross Amount Due To Seller (Line 420) | |
| 302. Less Amount Paid By/For Borrower (Line 220) | ( 84,355.30) | 602. Less Reductions Due Seller (Line 520) | ( ) |
| **303. CASH ( FROM ) ( X TO ) BORROWER** | 0.00 | **603. CASH ( TO ) ( FROM ) SELLER** | 0.00 |

## L. SETTLEMENT CHARGES

| | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|
| 700. TOTAL COMMISSION Based Price $ @ 0.0000 % | | |
| Division of Commission (line 700) as Follows: | | |
| 701. $ to | | |
| 702. $ to | | |
| 703. Commission Paid at Settlement | | |
| 704. to | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | |
| 801. Loan Origination Fee 0.0000 % to Heartland Home Finance, Inc. | 564.00 | |
| 802. Loan Discount % to | | |
| 803. Appraisal Fee to Arsenal Appraisals POC $300.00b | | |
| 804. Processing Fee to Heartland Home Finance, Inc. | 550.00 | |
| 805. Commitment Fee to ABN AMRO Mortgage Group | 375.00 | |
| 806. Deferred Prm pd by Lnd to Heartland Home Finance, Inc. POC $830.00b | | |
| 807. Underwriting Fee to Heartland Home Finance, Inc. | 140.00 | |
| 808. Broker Fee to Heartland Home Finance, Inc. | 439.00 | |
| 809. | | |
| 810. | | |
| 811. | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | |
| 901. Interest From 11/20/01 to 12/01/01 @ $ 15.560000/day ( 11 days %) | 171.16 | |
| 902. Mortgage Insurance Premium for months to | | |
| 903. Hazard Insurance Premium for 1.0 years to Currie Insurance POC $466.00b | | |
| 904. | | |
| 905. | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | |
| 1001. Hazard Insurance 3.000 months @ $ 38.84 per month | 116.52 | |
| 1002. Mortgage Insurance months @ $ per month | | |
| 1003. City/Town Taxes months @ $ per month | | |
| 1004. County Taxes 13.000 months @ $ 77.21 per month | 1,003.73 | |
| 1005. Assessments months @ $ per month | | |
| 1006. months @ $ per month | | |
| 1007. months @ $ per month | | |
| 1008. Aggregate Adjustment months @ $ per month | -77.68 | |
| **1100. TITLE CHARGES** | | |
| 1101. Settlement or Closing Fee to Archer Land Title, Inc. | 300.00 | |
| 1102. Abstract or Title Search to | | |
| 1103. Title Examination to | | |
| 1104. Title Insurance Binder to | | |
| 1105. Document Preparation to | | |
| 1106. Notary Fees to | | |
| 1107. Attorney's Fees to | | |
| (includes above item numbers: ) | | |
| 1108. Title Insurance to Fidelity National Title Insurance Company | 521.00 | |
| (includes above item numbers: ) | | |
| 1109. Lender's Coverage $ 83,000.00 521.00 | | |
| 1110. Owner's Coverage $ | | |
| 1111. | | |
| 1112. | | |
| 1113. | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | |
| 1201. Recording Fees: Deed $ ; Mortgage $ 50.00; Releases $ | 50.00 | |
| 1202. City/County Tax/Stamps: Deed ; Mortgage | | |
| 1203. State Tax/Stamps: Revenue Stamps ; Mortgage | | |
| 1204. | | |
| 1205. | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | |
| 1301. Survey to | | |
| 1302. Pest Inspection to | | |
| 1303. | | |
| 1304. | | |
| 1305. | | |
| 1400. TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K) | 4,152.73 | |

Certified to be a true copy.

( 2001100259 / 2001100259 / 11 )

LL Research    P/F NULL
B650989  0617787885__ASGNO
Sold Unit:
LL: Chase Sale Pending

2006009562
ROBESON CO, NC          FEE $14.00
ASSIGNED & RECORDED:
08-14-2006  12:25:46 PM
VICKI L LOCKLEAR
REGISTER OF DEEDS
BY: KYNIA THOMPSON
DEPUTY
BK:D 1553
PG:348-348

# ASSIGNMENT of DEED of TRUST

| PREPARED BY: SMI | Stewart Mortgage Information | |
| RECORDING REQUESTED BY | Attn. Sherry Doza | Pool : 0 |
| /AFTER RECORDING RETURN TO: | P.O. Box 540817 | Loan Number: |
| | Houston, Texas  77254-0817 | Other Loan Number: 1692879370 |
| | Tel. (800) 795-5263 | Investor Number: 720027140 |

STATE OF NORTH CAROLINA                    54141                    405_2249

COUNTY OF ROBESON                              KNOW ALL MEN BY THESE PRESENTS:

That ABN AMRO MORTGAGE GROUP, INC. ('Assignor'), 2600 West Big Beaver Road, Troy, Michigan  48007-3703, acting herein by and through a duly authorized officer, the owner and holder of one certain promissory note executed by LENNIE LOCKLEAR AND CAROLYN LOCKLEAR ('Borrower(s)') secured by a Deed of Trust of even date therewith from Borrower(s) for the benefit of the holder of the said note, which was recorded on the lot(s), or parcel(s) of land described therein situated in the County of Robeson,  State of North Carolina:

   Recording Ref:   Book 1211, Page No. 0565, Date of Mortgage 11/15/2001

   Original Beneficiary:   ABN AMRO MORTGAGE GROUP, INC.

   Property Address:   508 FODIESVILLE RD., SHANNON, NC 28386

For and in consideration of the sum of Ten and No/100 dollars ($10.00), and other good valuable and sufficient consideration paid, the receipt of which is hereby acknowledged, does hereby transfer and assign, set over and deliver unto MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (Assignee), P.O. BOX 2026, FLINT, MICHIGAN 48501-2026, all beneficial interest in and to title to said Deed of Trust, together with the note and all other liens against said property securing the payment thereof, and all title held by the undersigned in and to said land.

TO HAVE AND TO HOLD unto said Assignee said above described Deed of Trust and note, together with all and singular the liens, rights, equities, title and estate in said real estate therein described securing the payment thereof, or otherwise.

Executed this the 6th day of September A.D. 2005.                ABN AMRO MORTGAGE GROUP, INC.

                                                              By: _____

                                                              CHERYL SWINSINSKI
                                                              VICE PRESIDENT

THE STATE OF TEXAS
COUNTY OF HARRIS
On this the 6th day of September A.D. 2005, before me, a Notary Public, appeared CHERYL SWINSINSKI to me personally known, who being by me duly sworn, did say that (s)he is the VICE PRESIDENT of ABN AMRO MORTGAGE GROUP, INC., and that said instrument was signed on behalf of said corporation by authority of its Board of Directors, and said CHERYL SWINSINSKI acknowledged said instrument to be the free act and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

A. TOWNSEND
NOTARY PUBLIC
STATE OF TEXAS
COMM. EXPIRES 08-20-2008

MIN Number: 100027716928793700

MERS Phone: 1-888-679-6377

2012005052



ROBESON CO, NC          FEE $26.00
PRESENTED & RECORDED:
06-08-2012  12:15:12 PM
VICKI L LOCKLEAR
REGISTER OF DEEDS
BY: TOMASA MORALES PEAVY
ASSISTANT

BK:D 1858
PG:551-551

When Recorded Return To:
JPMorgan Chase Bank, NA
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

Loan #:

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. PO BOX 2026, FLINT, MI, 48501 by these presents does convey, grant, sell, assign, transfer and set over the described Deed of Trust with all interest secured thereby, all liens, and any rights due or to become due thereon to JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 KANSAS LANE, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said Deed of Trust is dated 11/15/2001, executed by LENNIE LOCKLEAR AND CAROLYN LOCKLEAR to ABN AMRO MORTGAGE GROUP, INC. in the amount of $83,000.00, was recorded as Instrument # n/a, and/or Book 1211, Page 0565, in the office of the Recorder of ROBESON County, North Carolina.

Dated on __/__/2012 (MM/DD/YYYY)
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _____
Zasacria D. Ross
VICE PRESIDENT

STATE OF LOUISIANA   PARISH OF OUACHITA
Before me on __/__/2012 (MM/DD/YYYY), personally appeared Zasacria D. Ross, as VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., who being authorized to do so, executed the foregoing instrument for the purposes therein contained by his/her/their free act and deed. He/she/they is (are) personally known to me.

_____
Helen P. Tubbs
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

HELEN P. TUBBS, NOTARY PUBLIC
MOREHOUSE, LOUISIANA
LIFETIME COMMISSION
NOTARY ID # 40392

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
JPCAS 16485462 -- CHASE RFE3806735 N1  MIN 100027716928793700 MERS PHONE 1-888-679-MERS FRMNC1

*16485462*

We ⸍tify that this is a true and
corre⸍ copy of the original hereof.
PEIRSONPATTERSON, LLP

*Lori Stacy*

————————————*[Space Above This Line For Recording Data]*————————————

Loan No.:

# NORTH CAROLINA ASSIGNMENT OF DEED OF TRUST

**After recording please return to:**
**PEIRSONPATTERSON, LLP**
**ATTN: RECORDING DEPT.**
**13750 OMEGA ROAD**
**DALLAS, TX 75244-4505**

**This document prepared by:**
**PEIRSONPATTERSON, LLP**
**WILLIAM H. PEIRSON**
**13750 OMEGA ROAD**
**DALLAS, TX 75244-4505**

**Parcel ID Number: N/A**

For Value Received, **JPMorgan Chase Bank, National Association**, the undersigned holder of a Deed of Trust (herein "Assignor") does hereby grant, sell, assign, transfer and convey, unto **BAYVIEW LOAN SERVICING, LLC**, (herein "Assignee"), whose address is **4425 PONCE DE LEON BLVD 5TH FLOOR, CORAL GABLES, FL 33146**, all beneficial interest under a certain Deed of Trust dated **November 15, 2001** and recorded on **January 29, 2002**, made and executed by **LENNIE LOCKLEAR AND CAROLYN LOCKLEAR**, to **JPMORGAN CHASE BANK, N.A.**, Trustee, upon the following described property situated in **ROBESON** County, State of North Carolina:
Property Address: **508 FODIESVILLE RD, SHANNON, NC 28386**

**A CERTAIN TRACT OR PARCEL OF LAND IN ROBERSON COUNTY, IN THE STATE OF NORTH CAROLINA, DESCRIBED AS FOLLOWS**

**BEING ALL OF LOT NO TWELVE (12) AS SHOWN ON THAT CERTAIN MAP ENTITLED "SHANNON HEIGHTS, SECTION II," PREPARED BY JOHN D POWES SURVEYING, AND DULY RECORDED ON JUNE 7, 1994, IN BOOK OF MAPS NO THIRTY-THREE (33), AT PAGE SIXTY-SIX (66), ROBERSON COUNTY REGISTRY, TO WHICH SAID MAP REFERENCE IS HEREBY MADE FOR A MORE PARTICULAR DESCRIPTION OF SAID PROPERTY AND THE SAME IS INCORPORATED AS A PART HEREOF**

such Deed of Trust having been given to secure payment of **Eighty Three Thousand and 00/100ths ($83,000.00)**, which Deed of Trust is of record in Book, Volume, or Liber No. **1211**, at Page **0565** (or as No. N/A), in the Office of Register of Deeds of **ROBESON** County, State of North Carolina, and all rights accrued or to accrue under such Deed of Trust.

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
* 1 6 9 2 8 7 9 3 7 0 *

TO HAVE AND TO HOLD, the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described Deed of Trust.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Deed of Trust on 9/6/2014.

Assignor:
JPMorgan Chase Bank, National Association

By: _Knollum J Itail_

Its: _Vice President_

**ACKNOWLEDGMENT**

State of **Louisiana**                                        §
                                                             §
Parish of **Ouachita**                                       §

On this _6th_ day of _September 2014_ before me appeared _Knollum J Itail_, to me personally known, who, being by me duly sworn (or affirmed) did say that he/she is the _Vice President_, of **JPMorgan Chase Bank, National Association**, and that the seal affixed to said instrument is the corporate seal of said national association and that the instrument was signed and sealed on behalf of the national association by authority of its board of directors and that _Knollum J Itail_ acknowledged the instrument to be the free act and deed of the national association.

*Y. K. Wilson*
*Notary Public #064399*
*Ouachita Parish, LA*
*Lifetime Commission*

Official Signature of Notary

*Y. K. Wilson*

Notary's Printed or Typed Name

**NOTARY PUBLIC**

Title of Officer

(Official Seal)                          My Commission Expires: **LIFETIME**

Loan #:

## SATISFACTION OF SECURITY INSTRUMENT

The undersigned is now the secured creditor in the Security Instrument identified as follows:
Type of Security Instrument: **Deed of Trust**
Original Grantor(s): **LINNIE LOCKLEAR AND CAROLYN LOCKLEAR**
Original Secured Party(ies): **CITIFINANCIAL SERVICES, INC.**
Recording Data: The Security Instrument is recorded in **Book 1285, at Page 0673, and/or as Document #** , in the office of the
Register of Deeds for **ROBESON** County, **North Carolina**.

The undersigned hereby instructs the Register of Deeds to Satisfy the Deed of Trust from the record.

Dated on __5 ⋅ 18__ /2015 (MM/DD/YYYY)
**CFNA RECEIVABLES (DE), INC. F/K/A CITIFINANCIAL SERVICES, INC., A DELAWARE CORPORATION**

By: _____
    **Heather Navarro**
    **VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on __5 / 18__ /2015 (MM/DD/YYYY), by Heather Navarro as VICE
PRESIDENT of CFNA RECEIVABLES (DE), INC. F/K/A CITIFINANCIAL SERVICES, INC., A DELAWARE
CORPORATION, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes
therein contained. He/she/they is (are) personally known to me.

_____
Danielle Kennedy
Notary Public - State of FLORIDA
Commission expires: 06/26/2017

        **Danielle Kennedy**
    **Notary Public State of Florida**
      **My Commission # FF031287**
        **Expires June 26, 2017**

**Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
When Recorded Return To: CitiFinancial Servicing, LLC, C/O Nationwide Title Clearing, Inc. 2100 Alt. 19 North, Palm Harbor, FL
34683
CFDOJ 25989291 -- POOL 1 N DOCR T1415053805 [C-1] CORNC1

*D0010395981*

BK 1285PG0673

FILED R OF D
VICKI L. LOCKLEAR

2003 FEB 10 A 11: 42

ROBESON COUNTY

# DEED OF TRUST

| SATISFACTION: The debt secured by the within Deed of Trust together with the Note secured thereby has been satisfied in full. | Recording: Time, Book and Page |
|---|---|
| This the _____ day of _____, _____. | |
| Signed: _____ | |
| By: _____ | |

| Tax Parcel Identifier No. | _____ |
|---|---|

This Instrument prepared by: KEN GILCHRIST
Mail after recording to:     CITIFINANCIAL SERVICES, INC.
2550 FAYETTEVILLE ROAD P.O. Box 673
LUMBERTON NC 28358

    THIS DEED OF TRUST ("Security Instrument") is made on 02/07/2003 . The grantor is CAROYLN LOCKLEAR AND LINNIE LOCKLEAR

("Borrower"). The trustee is
KEN GILCHRIST
("Trustee"). The beneficiary is CITIFINANCIAL SERVICES, INC.
, which is a corporation organized and existing           under the laws of
Delaware     , and whose address is
2550 FAYETTEVILLE ROAD LUMBERTON NC 28358
("Lender").

Borrower owes Lender the principal sum of
TWENTY-EIGHT THOUSAND THREE HUNDRED THIRTY-TWO AND 11/100 DOLLARS
Dollars (U.S. $ 28,332.11 ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on 03/12/2018 . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee and Trustee's successors and assigns, in trust, with power of sale, the following described property located in ROBESON       County, North Carolina:

(Intentionally Left Blank)

Case 7:15-cv-00220-D    Document 1-1    Filed 10/07/15    Page 54 of 72

LINNIE LOCKLEAR   CAROLYN LOCKLEAR

02/07/2003

SEE EXHIBIT "A" FOR A FULL LEGAL DESCRIPTION

TO HAVE AND TO HOLD unto Trustee and Trustee's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal and Interest; Prepayment and Late Charges.**  Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2.  **Funds for Taxes and Insurance.**  Subject to applicable law or to a written waiver by Lender, borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") equal to one-twelfth of: (a) yearly taxes and assessments which may attain priority over this Security Instrument; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums; and (d) yearly mortgage insurance premiums, if any.  These items are called "escrow items." Lender may estimate the Funds due on the basis of current data and reasonable estimates of future escrow items.

The Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay the escrow items. Lender may not charge for holding and applying the Funds, analyzing the account or verifying the escrow items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing that interest shall be paid on the Funds. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Security Instrument.

If the amount of the Funds held by Lender, together with the future monthly payments of Funds payable prior to the due dates of the escrow items, shall exceed the amount required to pay the escrow items when due, the excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly payments of Funds. If the amount of the Funds held by Lender is not sufficient to pay the escrow items when due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as required by Lender.

NC25681-5 6/2002  Original(Recorded)  Copy(Branch)  Copy(Customer)  Page 2 of 7

LINNIE LOCKLEAR    CAROLYN LOCKLEAR                    02/07/2003

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 19 the Property is sold or acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to late charges due under the Note; second, to prepayment charges due under the Note; third, to amounts payable under paragraph 2; fourth, to interest due; and last, to principal due.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 19 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Preservation and Maintenance of Property; Leaseholds.** Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property; Mortgage Insurance.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums

Case 7:15-cv-00220-D    Document 1-1    Filed 10/07/15    Page 56 of 72

LINNIE LOCKLEAR  CAROLYN LOCKLEAR

02/07/2003

secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amount disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the insurance in effect until such time as the requirement for the insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

**8. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**12. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

Case 7:15-cv-00220-D    Document 1-1    Filed 10/07/15    Page 57 of 72

BK1285PG0677

LINNIE LOCKLEAR  CAROLYN LOCKLEAR

02/07/2003

**13. Legislation Affecting Lender's Rights.** If enactment or expiration of applicable laws has the effect of rendering any provision of the Note or this Security Instrument unenforceable according to its terms, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument and may invoke any remedies permitted by paragraph 19. If Lender exercises this option, Lender shall take the steps specified in the second paragraph of paragraph 17.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note had no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraphs 13 or 17.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**19. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in the Security Instrument (but not prior to acceleration under paragraph 13 and 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 19, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

NC25681-5 6/2002  Original (Recorded)  Copy (Branch)  Copy (Customer)  Page 5 of 7

BK1285PG0678

LINNIE LOCKLEAR  CAROLYN LOCKLEAR

02/07/2003

If Lender invokes the power of sale, and if it is determined in a hearing held in accordance with applicable law that Trustee can proceed to sale, Trustee shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as applicable law may require. After the time required by applicable law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to the expenses of the sale, including, but not limited to, Trustee's fees of 5 % of the gross sale price; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

20. **Lender in Possession.** Upon acceleration under paragraph 19 or abandonment of the Property, Lender (in person, by agent or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Any rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Security Instrument.

21. **Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall cancel this Security Instrument without charge to Borrower. If Trustee is requested to release this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. Borrower shall pay any recordation costs.

22. **Substitute Trustee.** Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

23. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

24. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 24, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 24, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

BY SIGNING UNDER SEAL BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

NC25681-5 6/2002  Original(Recorded)  Copy(Branch)  Copy(Customer)  Page 6 of 7

BK1285PG0679

LINNIE LOCKLEAR  CAROLYN LOCKLEAR

02/07/2003

————[Space Below This Line For Acknowledgement]————

STATE OF NORTH CAROLINA, _ROBESON_ _____ County ss:

I, _Reginald K. Gilchrist_ , a Notary Public of the County of

_Cumberland_ , State of North Carolina, do

hereby certify that _LINNIE LOCKLEAR AND CAROLYN_

_LOCKLEAR_ personally appeared before me this day and

acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal this _7th_ day of _FEBRUARY_ , _2003_

commission expires: _10/28/2006_ _Reginald K. Gilchrist_
                                                    Notary Public

A SEAL-STAMP

STATE OF NORTH CAROLINA - COUNTY OF _____

The foregoing certificate of _____ , a Notary Public of

_____ County, North Carolina, is certified to be correct.

This the _____ day of _____ , _____ .

_____
Register of Deeds

This instrument was presented for registration this day and hour and duly recorded in the

office of the Register of Deeds of _____ County, N.C., in

Book _____ , Page _____ .

This the _____ day of _____ , _____ , at _____ o'clock ____ M.

_____
Register of Deeds

North Carolina Robeson County
The foregoing certificate of
_REGINALD K. Gilchrist_
is certified to be correct (Notary/Notaries Public)
This _12_ day of _Feb_ , 20 _03_
_Vonnie Maalider_ Deputy/Asst.
Vicki L. Locklear   Register of Deeds

680

BK1285PG0680

ORDER #:  3015956

## EXHIBIT A

ALL THAT CERTAIN LOT OR PARCEL OF LAND IN SHANNON TOWNSHIP, ROBESON COUNTY, NORTH CAROLINA AND MORE PARTICULARLY DESCRIBED AS FOLLOWS:

LYING AND BEING IN SHANNON TOWNSHIP, ROBESON COUNTY, NORTH CAROLINA, ABOUT 2.9 MILES NORTHEAST OF THE TOWN OF RED SPRINGS, ABOUT 0.2 MILES SOUTHEAST OF THE INTERSECTION OF SECONDARY ROAD NO. 1505 WITH SECONDARY ROAD NO. 1779 AND ON THE NORTHEAST SIDE OF AND ADJOINING SECONDARY ROAD NO. 1779. BOUNDED ON THE SOUTHWEST BY SECONDARY ROAD NO. 1779, ON THE NORTHWEST BY PEARL L. MCGIRT AND ON ALL OTHER SIDES BY OTHER LANDS OF NAOMI L. LOCKLEAR AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE CENTERLINE OF THE DITCH WICH IS A WEST LINE OF THE TRACT OF WHICH THIS IS A PART, SAID POINT BEING AT THE INTERSECTION OF THE NORTHEAST RIGHT-OF-WAY (30 FEET FROM CENTER) OF SECONDARY ROAD NO. 1779 AND THE MOST WESTERN LINE OF THE TRACT OF WHICH THIS IS A PART, THE CENTER OF THE DITCH AND RUNS THENCE AS THE RIGHT-OF-WAY OF SECONDARY ROAD NO. 1779 SOUTH 55 DEGREES 00 MINUTES EAST (7.00 FEET TO AN IRON ROD IN SAID RIGHT-OF-WAY) A TOTAL DISTANCE OF 145.11 FEET TO AN IRON ROD IN SAID RIGHT-OF-WAY; THENCE NORTH 35 DEGREES 00 MINUTES EAST 175.00 FEET TO AN IRON ROD; THENCE NORTH 55 DEGREES 00 MINUTES WEST (98.74 FEET TO AN IRON ROD ON THE BANK OF A DITCH) A TOTAL DISTANCE OF 103.81 FEET TO A POINT IN THE DITCH WHICH IS A WESTERN LINE OF THE TRACT OF WHICH THIS IS A PART; THENCE AS SAID CENTERLINE OF THE DITCH SOUTH 48 DEGREES 16 MINUTES 40 SECONDS WEST 179.81 FEET TO THE BEGINNING, CONTAINING 0.50 ACRES, SAID LANDS BEING LOT NO. 1 OF THE FODIE LOCKLEAR ESTATE DIVISION AS SHOWN ON A MAP RECORDED IN MAP BOOK 13, PAGE 26, ROBESON COUNTY REGISTRY.

BY FEE SIMPLE DEED FROM JEFF LOCKLEAR AND WIFE, RETHA JANE LOCKLEAR AS SET FORTH IN BOOK 888, PAGE 5 DATED 12/11/1995 AND RECORDED 12/12/1995, ROBESON COUNTY RECORDS, STATE OF NORTH CAROLINA.

681

NORTH CAROLINA

ROBESON        County

REQUEST FOR COPY OF NOTICE OF
DEFAULT AND SALE

In accordance with the provisions of G.S. 45-21.17(A), request is hereby made that a copy of

any notice of sale under the deed of trust (mortgage) recorded on   03/26/1999   , in Book

1051   , page  891   , records of ROBESON        County, North Carolina,

executed by

CAROYLN LOCKLEAR  AND LINNIE LOCKLEAR

as trustor (mortgagor) in which

AAMG

is named as beneficiary (mortgagee) and

RET:   as trustee, be mailed to

CITIFINANCIAL SERVICES, INC.

at the following address:   P.O. Box 679

2550 FAYETTEVILLE ROAD  LUMBERTON NC 28358

with a copy to P. O. Box 17170, Baltimore, MD 21203.

CITIFINANCIAL SERVICES, INC.

By: _Nancy Ashworth_

NORTH CAROLINA

    ROBESON        County

I, _Reginald K. Gilchrist_ , a Notary Public of

said County and State, do hereby certify that _Nancy Ashworth_

personally appeared before me this day and acknowledged the due execution of the foregoing

Request.

Witness my hand and notarial seal, this   7th   day of   February   , 20

_Gerald K. Gilchrist_
Notary Public

My commission expires: _10/24/2006_

Original (Recorded)    Copy (Branch)    Copy (Customer)
North Carolina 65-4 6/2002

North Carolina Robeson County
The foregoing certificate of

_Reginald K. Gilchrist_

is certified to be correct (Notary/Notaries Public)

This  10  day of   Feb   , 20  03

_Deputy/Asst._
Vicki L. Locklear   Register of Deeds

**Chase Home Finance LLC (FL5-7734)**
PO BOX 44090
Jacksonville, FL 32231-4090

CHASE 

February 19, 2011

**Return Service Requested**
4-746-54259-0001283-001-010-000-000-000

LENNIE  LOCKLEAR
508 FODIESVILLE RD
SHANNON NC  28386-6032

**Your house is your home.  We want to keep it that way.**

**We need to talk--call (800) 848-9380 today.**

You're going through tough times--we can help.  In fact, we believe **your home loan may be eligible for a loan workout**--we may be able to change the terms of your loan, including the interest rate, to reduce the monthly payment to an amount you can afford.

> **Call us today at (800) 848-9380 so we can help you turn things around.  We'll discuss your current situation (outlined in the enclosed letter) and the options available to you. But we cannot stress enough that the longer you delay calling us--the fewer chances you may have to keep your home.**

It will only take a few minutes on the phone--one of our Loan Specialists will work with you to determine the option that best fits your needs.  There are several options available--**call us now** and let's see which one will work best for you.

We are committed to working with you to find a way to help you keep your home, **but you must call us immediately at (800) 848-9380--the longer you delay the fewer options you may have.**

Collections Department
Chase Home Finance LLC
(800) 848-9380
(800) 582-0542 TDD / Text Telephone

P.S. The enclosed letter outlines your loan status and **the consequences that will occur unless we receive the required financial information from you and can approve you for a loan workout.** Once you call us with the information needed, then we can work together to determine the option that will work best for you.  We cannot guarantee that you will be approved, but your only chance of saving your home is by contacting us immediately. Please don't delay--call us now at **(800) 848-9380**.

FCL MTM



Chase Home Finance LLC (FL5-7734)
PO BOX 44090
Jacksonville, FL 32231-4090

February 19, 2011

4-746-54259-0001283-001-010-000-000-000

LENNIE LOCKLEAR
508 FODIESVILLE RD
SHANNON NC 28386-6032

**Acceleration Warning (Notice of Intent to Foreclose)**
Account:                          Loan")
Property Address:   508 FODIESVILLE RD
                    SHANNON, NC 28386 (the "Property")

Dear Mortgagor(s):

Under the terms of the Mortgage or Deed of Trust ("Security Instrument") securing your Loan, Chase Home Finance LLC ("Chase") hereby notifies you of the following:

1. You are in default because you have failed to pay the required monthly installments commencing with the payment due 07/01/2008.

2. As of 02/19/2011, total monthly payments (including principal, interest, and escrow if applicable), late fees, NSF fees, and other fees and advances due under the terms of your loan documents in the total amount of $25,537.55 are past due. This past-due amount is itemized below. If applicable, your account may have additional escrow amounts that have been paid out and are due on the Loan. If you have any questions about the amounts detailed below, please contact us as soon as possible at (800) 848-9380.

|  |  |
|---|---|
| Total Monthly Payments | $23,005.86 |
| Late Fees | $0.00 |
| NSF Fees | $0.00 |
| Other Fees & Advances* | $2,915.37 |
| Amount Held in Suspense | $383.68 |

*Other Fees and Advances include those amounts allowed by your Note and Security Instrument. If you need additional information regarding the fees, please contact us at the number provided below.*

You are also responsible for paying any amounts that become due from the date of this letter through the expiration date set forth in Paragraph 3 below. These amounts may include, but are not limited to, taxes, insurance, inspection fees, and other fees, as permitted by applicable law.

If you have any reason to dispute the past-due amount listed above, or if you believe your Loan is current, please contact us at the number provided below.

3. Action required to cure the default: You have forty-five (45) days from the date of this notice to pay the past-due amount and all fees, which will cure the default.

4. If you fail to cure the default within forty-five (45) days from the date of this notice, Chase will accelerate the maturity of the Loan, terminate your credit line if the Loan provides for revolving advances, declare all sums secured by the Security Instrument immediately due and payable, and commence foreclosure proceedings, all without further notice to you. If this happens, Chase will be entitled to collect its expenses incurred in pursuing the remedies provided in the Security Instrument, which may include, but not be limited to, allowable foreclosure/attorney fees, and other expenses permitted by applicable law.

5. If permitted by applicable law, you have the right to reinstate after acceleration of the Loan and the right to bring a court action to assert the nonexistence of a default, or any other defense to acceleration, foreclosure, and sale. However, the amount required to reinstate may be higher than what is owed under Paragraph 2 above due to additional fees and charges that we are entitled to collect under the Loan, including attorney fees related to any foreclosure action we initiate.

6. The total amount due under Paragraph 2 above is required to be paid in the form of a cashier's check or certified funds and should be remitted to:

| Regular Mail: | Chase Home Finance LLC<br>PO BOX 78420<br>Phoenix, AZ 85062-8420 |

| Overnight Mail: | Chase Home Finance LLC<br>Attention PO BOX 78420<br>1820 East Sky Harbor Circle South<br>Phoenix, AZ 85034-9700 |

Except as required by law, we are under no obligation to accept less than the full amount owed. If you send us less than the full amount owed, we may in our sole discretion apply such partial payment to your Loan without waiving any default or waiving our right to accelerate the Loan and continue with foreclosure proceedings in accordance with Paragraph 4 above.

7. If you are unable to pay the amount past due, Chase Home Finance LLC has a variety of loss mitigation programs that might help you resolve your default and keep your home; however, we need to talk with you to discuss these options and determine which of them might be appropriate for your circumstances. Please call us as soon as possible at (800) 848-9380, or write to us at:

| Regular/Overnight Mail: | Chase Home Finance LLC<br>Attention Collections Department<br>Mail Code OH4-7356<br>3415 Vision Drive<br>Columbus, OH 43219-6009 |

8. While the Loan remains in default, we will perform certain tasks to protect our interest in the Property, including visits to your Property at regular intervals during the default. This will be done to determine, as of the date of the inspection, the property condition, occupancy status, and possibly your plans for curing the default and paying this Loan on time. You should anticipate that any costs incurred by Chase will be added to the amount you now owe if permitted by your loan documents or applicable law.

Chase offers homeownership counseling services to borrowers in some areas. Counseling is also available through a variety of nonprofit organizations experienced in homeownership counseling and approved by the Secretary of Housing and Urban Development (HUD).

Two HUD-approved homeownership counseling agencies are:

CCCS of Raleigh-Triangle Family Services:    401 Hillsborough Street
Raleigh, NC 27603-1792
(800) 283-6904
www.tfsnc.org

CCCS of United Family Services:    601 East 5th Street, Suite 400
Charlotte, NC 28202-3095
(866) 230-0956
www.unitedfamilyservices.org

A more complete list of agencies can be obtained by visiting www.ncforeclosurehelp.org.

Contact information for the Consumer Complaint Division of North Carolina Commissioner of Banks (NCCOB) is:

4309 Mail Service Center
Raleigh, NC 27699-4309
(888) 442-8188
www.nccob.gov

If you have any questions, please contact us at the number provided below. At Chase, we value you as a customer and want to ensure your continued satisfaction.

Sincerely,
Collections Department
Chase Home Finance LLC
(800) 848-9380
(800) 582-0542 TDD / Text Telephone

Enclosure

1. Federal Trade Commission Pamphlet

CERTIFIED MAIL: Return Receipt Requested and First Class Mail

An important reminder for all our customers:  As stated in the "Questions and Answers for Borrowers about the Homeowner Affordability and Stability Plan" distributed by the Obama Administration, "Borrowers should beware of any organization that attempts to charge a fee for housing counseling or modification of a delinquent loan, especially if they require a fee in advance."  Chase offers loan modification assistance free of charge (i.e., no modification fee required).  Please call us immediately at (800) 848-9380 to discuss your options.  The longer you delay the fewer options you may have.

**We are attempting to collect a debt, and any information obtained will be used for that purpose.**

We may report information about your account to credit bureaus.  Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

If you are represented by an attorney, please refer this letter to your attorney and provide us with the attorney's name, address, and telephone number.

**To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, a secured party retains rights under its security instrument, including the right to foreclose its lien.**

BR013

Chase Home Finance LLC (FL5-7734)
PO BOX 44090
Jacksonville, FL 32231-4090



February 19, 2011

**Return Service Requested**
0-746-54259-0001284-001-010-000-000-000

CAROLYN LOCKLEAR
508 FODIESVILLE RD
SHANNON NC 28386-6032

**Your house is your home. We want to keep it that way.**

**We need to talk--call (800) 848-9380 today.**

You're going through tough times--we can help. In fact, we believe **your home loan may be eligible for a loan workout**--we may be able to change the terms of your loan, including the interest rate, to reduce the monthly payment to an amount you can afford.

> **Call us today at (800) 848-9380 so we can help you turn things around. We'll discuss your current situation (outlined in the enclosed letter) and the options available to you. But we cannot stress enough that the longer you delay calling us--the fewer chances you may have to keep your home.**

It will only take a few minutes on the phone--one of our Loan Specialists will work with you to determine the option that best fits your needs. There are several options available--**call us now** and let's see which one will work best for you.

We are committed to working with you to find a way to help you keep your home, **but you must call us immediately at (800) 848-9380--the longer you delay the fewer options you may have.**

Collections Department
Chase Home Finance LLC
(800) 848-9380
(800) 582-0542 TDD / Text Telephone

P.S. The enclosed letter outlines your loan status and **the consequences that will occur unless we receive the required financial information from you and can approve you for a loan workout.** Once you call us with the information needed, then we can work together to determine the option that will work best for you. We cannot guarantee that you will be approved, but your only chance of saving your home is by contacting us immediately. Please don't delay--call us now at **(800) 848-9380**.

FCL MTM



February 19, 2011

0-746-54259-0001284-001-010-000-000-000

CAROLYN LOCKLEAR
508 FODIESVILLE RD
SHANNON NC 28386-6032

**Acceleration Warning (Notice of Intent to Foreclose)**
Account:            Loan")
Property Address:  508  FODIESVILLE RD
                      SHANNON, NC 28386 (the "Property")

Dear Mortgagor(s):

Under the terms of the Mortgage or Deed of Trust ("Security Instrument") securing your Loan, Chase Home
Finance LLC ("Chase") hereby notifies you of the following:

1. You are in default because you have failed to pay the required monthly installments commencing with
   the payment due 07/01/2008.

2. As of 02/19/2011, total monthly payments (including principal, interest, and escrow if applicable), late
   fees, NSF fees, and other fees and advances due under the terms of your loan documents in the total
   amount of $25,537.55 are past due. This past-due amount is itemized below.  If applicable, your
   account may have additional escrow amounts that have been paid out and are due on the Loan. If you
   have any questions about the amounts detailed below, please contact us as soon as possible at (800)
   848-9380.

   | | |
   |---|---|
   | Total Monthly Payments | $23,005.86 |
   | Late Fees | $0.00 |
   | NSF Fees | $0.00 |
   | Other Fees & Advances* | $2,915.37 |
   | Amount Held in Suspense | $383.68 |

   *Other Fees and Advances include those amounts allowed by your Note and Security
   Instrument. If you need additional information regarding the fees, please contact us at the
   number provided below.*

   You are also responsible for paying any amounts that become due from the date of this letter through
   the expiration date set forth in Paragraph 3 below.  These amounts may include, but are not limited to,
   taxes, insurance, inspection fees, and other fees, as permitted by applicable law.

   If you have any reason to dispute the past-due amount listed above, or if you believe your Loan is
   current, please contact us at the number provided below.

3. Action required to cure the default: You have forty-five (45) days from the date of this notice to pay the past-due amount and all fees, which will cure the default.

4. If you fail to cure the default within forty-five (45) days from the date of this notice, Chase will accelerate the maturity of the Loan, terminate your credit line if the Loan provides for revolving advances, declare all sums secured by the Security Instrument immediately due and payable, and commence foreclosure proceedings, all without further notice to you. If this happens, Chase will be entitled to collect its expenses incurred in pursuing the remedies provided in the Security Instrument, which may include, but not be limited to, allowable foreclosure/attorney fees, and other expenses permitted by applicable law.

5. If permitted by applicable law, you have the right to reinstate after acceleration of the Loan and the right to bring a court action to assert the nonexistence of a default, or any other defense to acceleration, foreclosure, and sale. However, the amount required to reinstate may be higher than what is owed under Paragraph 2 above due to additional fees and charges that we are entitled to collect under the Loan, including attorney fees related to any foreclosure action we initiate.

6. The total amount due under Paragraph 2 above is required to be paid in the form of a cashier's check or certified funds and should be remitted to:

    Regular Mail:          Chase Home Finance LLC
                           PO BOX 78420
                           Phoenix, AZ 85062-8420


    Overnight Mail:        Chase Home Finance LLC
                           Attention PO BOX 78420
                           1820 East Sky Harbor Circle South
                           Phoenix, AZ 85034-9700

    Except as required by law, we are under no obligation to accept less than the full amount owed. If you send us less than the full amount owed, we may in our sole discretion apply such partial payment to your Loan without waiving any default or waiving our right to accelerate the Loan and continue with foreclosure proceedings in accordance with Paragraph 4 above.

7. If you are unable to pay the amount past due, Chase Home Finance LLC has a variety of loss mitigation programs that might help you resolve your default and keep your home; however, we need to talk with you to discuss these options and determine which of them might be appropriate for your circumstances. Please call us as soon as possible at (800) 848-9380, or write to us at:

    Regular/Overnight Mail:   Chase Home Finance LLC
                              Attention Collections Department
                              Mail Code OH4-7356
                              3415 Vision Drive
                              Columbus, OH 43219-6009

8. While the Loan remains in default, we will perform certain tasks to protect our interest in the Property, including visits to your Property at regular intervals during the default. This will be done to determine, as of the date of the inspection, the property condition, occupancy status, and possibly your plans for curing the default and paying this Loan on time. You should anticipate that any costs incurred by Chase will be added to the amount you now owe if permitted by your loan documents or applicable law.

Chase offers homeownership counseling services to borrowers in some areas. Counseling is also available through a variety of nonprofit organizations experienced in homeownership counseling and approved by the Secretary of Housing and Urban Development (HUD).

Two HUD-approved homeownership counseling agencies are:

CCCS of Raleigh-Triangle Family Services:    401 Hillsborough Street
                                             Raleigh, NC 27603-1792
                                             (800) 283-6904
                                             www.tfsnc.org

CCCS of United Family Services:              601 East 5th Street, Suite 400
                                             Charlotte, NC 28202-3095
                                             (866) 230-0956
                                             www.unitedfamilyservices.org

A more complete list of agencies can be obtained by visiting www.ncforeclosurehelp.org.

Contact information for the Consumer Complaint Division of North Carolina Commissioner of Banks (NCCOB) is:

        4309 Mail Service Center
        Raleigh, NC 27699-4309
        (888) 442-8188
        www.nccob.gov

If you have any questions, please contact us at the number provided below. At Chase, we value you as a customer and want to ensure your continued satisfaction.

Sincerely,
Collections Department
Chase Home Finance LLC
(800) 848-9380
(800) 582-0542 TDD / Text Telephone


Enclosure

1. Federal Trade Commission Pamphlet


CERTIFIED MAIL:  Return Receipt Requested and First Class Mail

An important reminder for all our customers: As stated in the "Questions and Answers for Borrowers about the Homeowner Affordability and Stability Plan" distributed by the Obama Administration, "Borrowers should beware of any organization that attempts to charge a fee for housing counseling or modification of a delinquent loan, especially if they require a fee in advance." Chase offers loan modification assistance free of charge (i.e., no modification fee required). Please call us immediately at (800) 848-9380 to discuss your options. The longer you delay the fewer options you may have.

**We are attempting to collect a debt, and any information obtained will be used for that purpose.**

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

If you are represented by an attorney, please refer this letter to your attorney and provide us with the attorney's name, address, and telephone number.

**To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, a secured party retains rights under its security instrument, including the right to foreclose its lien.**

BR013